IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WILLIAM S. AND HUNTER S., <br><br> Plaintiffs, <br> v. <br><br> NASDAQ OMX FLEXIBLE BENEFITS PROGRAM AND THE NASDAQ OMX GROUP, INC., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 2:13-cv-00125 DN <br><br> District Judge David Nuffer |

Plaintiffs William and Hunter S. ("S. Family") filed suit against The NASDAQ OMX Group, Inc., ("NASDAQ") and NASDAQ OMX Flexible Benefits Program ("the Plan")(together "Defendants"), a benefits plan sponsored and administered by NASDAQ on behalf of its employees and their dependents.[1] S. Family claims they are owed benefits under the terms of the Plan and that NASDAQ is subject to statutory penalties for failing to deliver plan documents as requested. Both claims were brought pursuant to the Employment Retirement Income Security Act of 1974[2] ("ERISA"). S. Family moves for summary judgment on all their claims.[3] Defendants argue that S. Family received the benefits to which they were entitled under the Plan, that statutory penalties are not appropriate, and that the claims should be dismissed based upon the evidence in the administrative record.[4]

---

[1] Complaint, docket no. 2, filed Feb. 19, 2013.

[2] 29 U.S.C. §§ 1001–1461 (2012).

[3] Plaintiffs' Motion for Summary Judgment and Memorandum in Support (Motion for Summary Judgment), docket no. 22, filed Nov. 8, 2013.

[4] The Plan's and NASDAQ's Response to the S. Family's Motion for Summary Judgment (Defendants' Response), docket no. 28, filed Dec. 6, 2013.

## INTRODUCTION

There is no dispute that the Plan is governed by ERISA.[5] NASDAQ is the sponsor, insurer, and administrator of the Plan,[6] but delegated to Connecticut General Life Insurance Company ("CIGNA") "the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan."[7] As a third-party claims administrator, CIGNA has authority to determine "whether a person is entitled to benefits under the plan," to "comput[e] . . . any and all benefit payments," and to conduct "a full and fair review, as required by ERISA, of each claim denial which has been appealed . . . ."[8] Though CIGNA was originally named as a defendant, it was voluntarily dismissed from the case.[9]

William S. ("Bill") was employed by NASDAQ and insured under the Plan.  Bill's son, Hunter S. ("Hunter"), was insured under the Plan as Bill's dependent. Hunter has a "long history of anxiety, oppositional behavior, depression and family and school problems,"[10] and has struggled with drug and alcohol abuse.[11] Between December 8, 2008 and August 27, 2009, Hunter received treatment at two facilities. Hunter was treated at Second Nature Wilderness Program ("Second Nature") between December 8, 2008 and February 18, 2009.[12] Following his discharge from Second Nature, Hunter was treated at Catalyst Residential Treatment Center

---

[5] Defendants' Response at 1.

[6] Administrative Record (R.) at 0158, 0215, docket no. 21, filed under seal Nov. 5, 2013.

[7] *Id.* at 0215.

[8] *Id*.

[9] Notice of Dismissal Without Prejudice of Defendant Connecticut General Life Insurance Company, docket no. 3, filed Apr. 4, 2013.

[10] Complaint at 2, ¶ 10.

[11] R. at 0325–29.

[12] Motion for Summary Judgment at 5, ¶ 6.

("Catalyst") from February 20, 2009 to August 27, 2009.[13] Bill submitted claims to CIGNA for Hunter's treatment at both facilities.

Initially, CIGNA denied benefits for many of the treatments at Second Nature and Catalyst on the grounds that they were not medically necessary.[14] The Plan provides that beneficiaries may appeal a determination regarding medical necessity and clinical appropriateness to an independent review organization.[15] Having exhausted his internal appeals, Bill sought such a review of CIGNA's determination regarding medical necessity.[16] The independent review organization overturned CIGNA with respect to the medical necessity of Hunter's treatments.[17]

As a result, CIGNA authorized all of the relevant treatments at Second Nature and Catalyst,[18] but these authorizations did not guarantee payment. Instead, they provided that "[p]ayment for services rendered is contingent upon the participant's current health benefit eligibility status, copayments, and available mental health/substance-abuse benefits."[19] CIGNA subsequently issued payment for some, though not all, of Hunter's treatments at Catalyst.[20] According to Defendants, S. Family received all of the benefits to which they were entitled under the terms of the Plan. But S. Family claims that they did not. Though benefits associated with Hunter's treatment at Second Nature were in dispute as of the S. Family's motion for summary

---

[13] *Id*. at 5, ¶ 7.

[14] *Id.* at 2; Defendants' Response at 12.

[15] R. at 0210–11.

[16] R. at 0641–45.

[17] R. at 0924–28.

[18] R. at 0931–35.

[19] R. at 0933.

[20] Supplemental Administrative Record (Supp. R.), at 1000, docket no. 30, filed under seal Dec. 5, 2013.

judgment,[21] the parties have since reached a resolution with respect to treatment at Second

Nature.[22] The only benefits that remain in dispute are those associated with Hunter's treatment at

Catalyst.

Hunter received inpatient, residential treatment at Catalyst for a total of 183 days.  The

Plan provides that residential mental-health treatment is covered for a maximum of 60 days in a

calendar year.[23] It provides the same maximum benefit for residential substance-abuse

treatment.[24] CIGNA issued payment for 60 days of residential mental-health treatment at

Catalyst.[25] S. Family claims that CIGNA should have issued payment for 60 days of residential

substance-abuse treatment at Catalyst, as well.[26] S. Family believes that both the residential

mental-health benefit and the residential substance-abuse benefit should be applied toward

Hunter's 183 day residential stay at Catalyst, so that the Plan would cover a total of 120 of those

days. According to Defendants, CIGNA properly exercised its discretion and relied on a standard

methodology of paying benefits for primary diagnoses, not secondary ones.[27] CIGNA, therefore,

granted only the benefit for residential mental-health treatment for a maximum of 60 days.[28]

S. Family also seeks statutory penalties resulting from Defendants' alleged failure to

deliver plan documents as requested. On September 25, 2012, S. Family's attorney mailed a

certified letter to CIGNA and NASDAQ requesting "[c]opies of the summary plan description,

---

[21] Plaintiffs' Amended Reply Memo in Support of Motion for Summary Judgment and in Opposition to Defendants'
Response (Reply) at 3–4, docket no. 42, filed Feb. 5, 2014.

[22] Unopposed Motion to Vacate Order Requiring Supplemental Briefing Due to the Settlement of Only the Second
Nature Benefits Claim, docket no. 46, filed May 9, 2014.

[23] R. 0182.

[24] R. 0183.

[25] Supp. R. at 1000, 1068.

[26] Reply at 4–6.

[27] The Plan's and NASDAQ's Rebuttal Memorandum in Response to the S. Family's Amended Reply Memorandum
(Defendants' Rebuttal) at 9, docket no. 43, filed Feb. 19, 2014.

[28] *Id.* at 6–11.

master plan document . . . and any other documents under which Bill's group health benefits plan is established or operated . . . ."[29] The letter also requested a complete copy of Hunter's claim file.[30] Defendants do not dispute that this letter was sent to both CIGNA and NASDAQ.[31] NASDAQ did not respond to the letter. CIGNA responded on October 10, 2012, by stating that it could provide the requested claim file only after receiving a signed Health Insurance Portability and Accountability Act[32] ("HIPAA") authorization form.[33] S. Family's attorney responded on October 16, 2012, by providing a HIPAA authorization form signed by Bill and requesting again plan documents and Hunter's claim file.[34] CIGNA did not reply to this letter.[35] S. Family's attorney sent a final letter to CIGNA on November 26, 2012, reiterating his request.[36] Once again, CIGNA did not reply.[37]

There is no dispute that neither NASDAQ nor CIGNA provided a copy of the plan documents in response to written requests from S. Family's attorney. S. Family claims that this failure merits statutory penalties under 29 U.S.C. § 1132(c)(1).[38] Defendants claim that they are liable for statutory penalties solely for the letter sent to NASDAQ on September 25, 2012, and that the failure to respond to the two other requests cannot be imputed to them.[39]  Defendants also argue that penalties for not responding to the September 25, 2012 letter are not appropriate

---

[29] Exhibit A to Declaration of Brian S. King, docket no. 23-1, filed Nov. 8, 2013.

[30] *Id.*

[31] Defendants' Response at 31.

[32] Pub. L. No. 104-191, 110 Stat. 1936 (1996) (codified primarily in Titles 18, 26, and 42 of the United States Code).

[33] Exhibit B to Declaration of Brian S. King, docket no. 23-2, filed Nov. 8, 2013.

[34] Exhibit C to Declaration of Brian S. King, docket no. 23-3, filed Nov. 8, 2013.

[35] Motion for Summary Judgment at 7, ¶ 29.

[36] Exhibit D to Declaration of Brian S. King, docket no. 23-4, filed Nov. 8, 2013.

[37] Motion for Summary Judgment at 7, ¶ 29.

[38] *Id.* at 10–14.

[39] Defendants' Response at 31, 38–44.

because S. Family was not prejudiced by NASDAQ's failure to deliver the plan documents in response to this single request.[40]

## DISCUSSION

### I.  Standard of Review

In an ERISA case, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor."[41] ERISA permits a plan participant or beneficiary to bring an action to "recover benefits due to him under the terms of his plan . . . ."[42] A denial of benefits is reviewed de novo unless the plan grants the administrator discretionary authority to construe the terms of the plan and to determine eligibility for benefits.[43] When a plan delegates discretionary authority to a plan administrator, a court will uphold the plan administrator's determination unless it was arbitrary and capricious.[44] Arbitrary and capricious "review is limited to determining whether [the] interpretation [of the plan] was reasonable and made in good faith."[45] The decision need only fall "somewhere on a continuum of reasonableness—even if on the low end."[46]

Courts, however, will apply a less deferential standard of review in cases where "a plan administrator operates under an inherent or proven conflict of interest or there is a serious

---

[40] *Id.* at 36.

[41] *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (internal quotation and citation omitted).

[42] 29 U.S.C. § 1132(a)(1)(B) (2012).

[43] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[44] *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 801 (10th Cir. 2004).

[45] *Hickman v. GEM Ins. Co.*, 299 F.3d 1208, 1213 (10th Cir. 2002) (internal quotation and citation omitted).

[46] *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (internal quotation and citation omitted).

procedural irregularity in the administrative process."[47] In such cases, a court will temper the arbitrary and capricious standard of review "'in proportion to the seriousness of the conflict'" or the procedural irregularity.[48] When a plaintiff proves that a conflict of interest exists or that the plan administrator committed a serious procedural irregularity, "then the burden shifts to the plan administrator to prove the reasonableness of its decision under the arbitrary and capricious standard."[49] Under this shifting burden, the plan administrator must show with substantial evidence that it reasonably interpreted the plan.[50]

The parties agree that CIGNA's determination regarding benefits is subject to arbitrary and capricious review, but S. Family argues that standard of review should be "tempered" because of a conflict of interest and procedural irregularities.[51] First, they claim that CIGNA has an inherent conflict of interest because CIGNA was selected as the claims administrator by NASDAQ, the sponsor and insurer of the Plan.[52] Second, they argue that there were procedural irregularities in the processing of S. Family's claims.[53] This Court need not decide whether S. Family's claims justify a less deferential review because Defendants' asserted rationale for limiting coverage under the Plan is not reasonable under any standard of review.[54]

---

[47] *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1189–90 (10th Cir. 2007).

[48] *Id.*at 1190 (quoting *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825–26 (10th Cir. 1996)).

[49] *Id.*

[50] *Id.*

[51] Reply at 1–2.

[52] Summary Judgment Motion at 8–10.

[53] Reply at 2; Plaintiffs' Surreply Memo in Support of Motion for Summary Judgment and in Opposition to Defendants' Rebuttal (Plaintiffs' Surreply) at 3–4, docket no. 44, filed Mar. 5, 2014.

[54] *See Flinders*, 491 F.3d at 1190.

## II.    CIGNA's Rationale for Denying the Benefit Was Unreasonable

When "reviewing a plan administrator's decision, [a court] may only consider the evidence and arguments that appear in the administrative record."[55] Thus, a court may only evaluate the plan administrator's rationale for denying or applying benefits as it appears in the administrative record.[56]  The court then decides if the asserted rationale was arbitrary and capricious.[57]

In determining what rationale the plan administrator asserted, the court looks "only to those rationales that were specifically articulated in the administrative record as the basis for denying a claim."[58] Courts "will not permit ERISA claimants [who were] denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation."[59] The converse to this rule also applies: "a claimant may not urge new grounds outside the administrative record that would support the award of benefits."[60] Also, "if a plan provision is unambiguous, and the plan administrator's interpretation differs from the unambiguous meaning, then the plan administrator's interpretation is unreasonable, and the decision to deny benefits based on that interpretation is arbitrary and capricious."[61]

In *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, the Tenth Circuit upheld the district court's determination that a plan administrator's denial of a benefit was

---

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.* at 1191 (internal quotation and citation omitted).

[60] *Id.*

[61] *Id.* at 1193.

arbitrary and capricious because their asserted rationale was not supported by the record.[62] The

Tenth Circuit stated:

> We have reviewed the record and can find no evidence that [the Plan's]
> rationale was considered or specifically articulated by the Plan in the
> administrative proceeding. Had the Plan actually considered this rationale
> below, the administrative record would likely have contained information
> and arguments regarding [the Plan's rationale], but it does not.[63]

The Tenth Circuit also held that the plan administrator's decision was based on an interpretation

that differed from the unambiguous language of the plan.[64] Thus, the court determined that the

denial of benefits was unreasonable and, therefore, arbitrary and capricious.[65]

This case is similar to *Flinders* in two ways. First, Defendants asserted rationale is not

supported by the administrative record. Here, the Plan provides that CIGNA may determine

covered expenses according to "the methodologies in the most recent edition of the Current

Procedural terminology," and "methodologies as reported by generally recognized professionals

or publications."[66] The Plan also provides that "Maximum Reimbursable Charge" payments are

"subject to all other benefit limitations and applicable coding and payment methodologies

determined by [CIGNA]."[67] Defendants claim that CIGNA denied coverage for 60 days of

substance-abuse treatment for Hunter based on its standard methodologies. Specifically,

Defendants state that CIGNA denied paying the substance-abuse claims by relying on its

"standard methodology" to determine benefit eligibility "on the primary diagnosis code, not

---

[62] *Id.* at 1191.

[63] *Id.*

[64] *Id.* at 1193–94.

[65] *Id.*

[66] R. at 0202; 0694.

[67] R. at 0220; 0712.

secondary diagnosis codes."[68] Yet, Defendant's fail to cite to evidence in the administrative record that states what CIGNA's standard methodologies are in determining claims, or that CIGNA has such methodologies in place.[69] Had CIGNA actually based its decision on its standard methodologies "the administrative record would likely have contained information and arguments regarding [CIGNA's] rationale, but it does not."[70]

Moreover, in contrast to Defendant's argument, the record shows that CIGNA did not base its determination on the policy of paying only for primary diagnoses. Rather, CIGNA based its determination on the rationale that Catalyst listed only mental health as a diagnosis on its bill. In email chains from both July 6, 2012 and July 11, 2012, Bill questioned why CIGNA did not provide coverage for Hunter's treatment for the 120 days of coverage afforded by the Plan for both substance-abuse and mental-health treatments.[71] In a reply email, a CIGNA representative explained that CIGNA could not "pay over the plan benefit" and that it covered the mental-health treatment according to the diagnosis found in Catalyst's bill.[72] On August 15, 2012, in a formal letter, CIGNA responded to Bill's concerns, specifically answering his question by stating: "[t]he bills that were received by Cigna *did not include a diagnosis for substance abuse* and an additional 60 days are not to be authorized."[73] These responses clearly show that CIGNA's reasoning for denying the payment of the additional 60 days for substance-abuse treatment was that it was not listed as a diagnosis. CIGNA's responses do not indicate that its

---

[68] Defendants' Rebuttal at 9.

[69] *See id.*

[70] *Flinders*, 491 F.3d at 1191.

[71] *See* Supp. R. at 1047–49, 1065–67.

[72] Supp. R. at 1053, 1058, 1061.

[73] Supp. R. at 1068 (emphasis added).

standard methodology is to cover only primary diagnoses. Defendants' rationale is an after-the-fact interpretation not supported by the record and is unreasonable under *Flinders*.

Further, CIGNA's original rationale that no substance-abuse diagnoses appeared on the bill is unfounded. Three separate bills on the record all include multiple diagnoses for *both* mental-health and substance-abuse conditions.[74] Thus, CIGNA's initial rationale for denying S. Family's coverage for 60 days of substance-abuse treatment is unreasonable.

Another way this case is similar to *Flinders* is because CIGNA based its decision to deny coverage of the 60 days for substance-abuse treatment on an interpretation of the plan that does not follow its unambiguous meaning. The plain language of the Plan indicates that 60 days of substance-abuse treatment is covered under the Plan. The Plan clearly lists mental- health and substance-abuse treatment benefits separately and affords each a 2:1 ratio for up to 60 days of residential treatment.[75] The Plan could have included a provision stating that combined mental-health and substance abuse-treatments would be covered only under either the mental-health or the substance-abuse treatment option for a total of no more than 60 days. The Plan documents make no such distinction. Thus, the Plan unambiguously provides that a beneficiary may receive 60 days of residential treatment for mental health and a separate 60 days of treatment for substance abuse. Therefore, CIGNA's determination to deny benefits for 60 days of residential substance-abuse treatment was arbitrary and capricious because it contradicts the unambiguous terms of the policy. [76]

---

[74] R. at 0279, 0319, 0900.

[75] R. at 0182–83.

[76] *See Flinders*, 491 F.3d at 1193.

### III.    Statutory Penalties

Under federal statute, a plan administrator "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."[77] If a plan administrator refuses or fails to deliver plan documents after it receives a request, the court, in its discretion, may assess a daily penalty to the plan administrator, starting thirty days after the plan administrator failed to meet the request.[78] The failure to meet subsequent requests is treated as a separate violation of the statute.[79] The maximum penalty the court may assess is $110 per day.[80]

"These sections were included in ERISA so that plan participants and beneficiaries would be in a position to make informed decisions about how best to protect their rights."[81] "Congress' purpose in enacting the ERISA disclosure provisions" was to "ensur[e] that 'the individual participant knows exactly where he stands with respect to the plan.'"[82] The penalty statute focuses "necessarily on the plan administrator's actions, not the participant's."[83] "[N]either prejudice nor bad faith is required for a district court to impose penalties under 29 U.S.C. § 1132(c)."[84] However, "the presence or absence of these factors can certainly be taken into account by a district court in deciding whether to exercise its discretion and impose a penalty."[85]

---

[77] 29 U.S.C. § 1024(b)(4) (2012).

[78] 29 U.S.C. § 1132(c)(1) (2012).

[79] *Id*.

[80] 29 C.F.R. § 2575.502c-1 (2014).

[81] *Moothart v. Bell*, 21 F.3d 1499, 1503 (10th Cir. 1994) (citation omitted).

[82] *Firestone*, 489 U.S. at 118 (quoting H.R. Rep. No. 93–533 at 11 (1973)).

[83] *Moothart*, 21 F.3d at 1506–07.

[84] *Deboard v. Sunshine Mining & Ref. Co.*, 208 F.3d 1228, 1244 (10th Cir. 2000) (citation omitted).

[85] *Id.*(citation omitted).

S. Family asks that this Court assess penalties for NASDAQ's failure to provide plan documents after three separate requests.  First, S. Family claims that Defendants should be assessed the maximum penalty of $110 per day for 244 days for not responding to the September 25, 2012 request, which the S. Family's attorney sent to both the Defendants and to CIGNA.[86] Second, S. Family asserts that Defendants should also be assessed the maximum penalty of $110 per day for not responding to S. Family's second and third request, which were sent only to CIGNA on October 16, 2012 and November 26, 2012.[87] In total, S. Family seeks a penalty of $42,570.[88]

It is undisputed that S. Family's attorney sent three letters requesting plan documents and other information. It is also undisputed that Defendants and CIGNA failed to respond to these requests.[89] However, Defendants challenge an assessment of the statutory penalty for two reasons: (a) Defendants claim that S. Family was not prejudiced by its failure to send the plan documents because S. Family already had copies of all the documents and in fact had relied on them during the administrative appeals process;[90] and (b) Defendants claim that the second and third requests, which were sent only to CIGNA, cannot be imputed to them.[91]

### A.  The September 25, 2012 Request

Defendants argue that penalties are not appropriate in this case because S. Family was not prejudiced by the failure to deliver plan documents and there was no culpability or bad faith in the Defendants' failure to respond. Defendants support their argument in a three ways. First,

---

[86] *See* Motion for Summary Judgment at 14.

[87] *See id.* at 14–15.

[88] *Id.*

[89] Defendants' Response at 32.

[90] *Id.* at 32–37.

[91] *Id*. at 38–44.

NASDAQ sent plan documents to S. Family on two separate occasions during the appeals process.[92] Second, in a letter dated October 11, 2011, sent by Bill to CIGNA, Bill makes clear that he is in possession of the plan documents by attaching a copy himself.[93] Finally, Defendants claim that the failure to respond was due to internal miscommunication and that S. Family contributed to the miscommunication by not sending the letter directly to NASDAQ's Employee Benefits Manager.[94]

Defendants also cite to various cases in support of their argument to not assess the statutory penalty for a failure to respond to the Plaintiffs' request.[95] *Cytrynbaum v. Employee Retirement Plan of Amoco Corp. and Participating Companies*[96] is especially relevant here. In that case, the court denied the plaintiff's request for statutory penalties because the plaintiff was not prejudiced by receiving a response delayed for 150 days and the plaintiff contributed to the confusion by sending her request to the wrong division of the plan administrator.[97] The court noted that the plaintiff was familiar with the appropriate division and had worked with its employees in the past.[98] Because the plaintiff failed to send the letter to the appropriate division, she bore some responsibility for the defendants' delayed response.[99] The court also found it

---

[92] *Id.* at 33; *see also* R. at 646; Supp. R. at 1070.

[93] *Id* at 33; *see also* R. at 641–42.

[94] *Id.* at 37.

[95] *Id.* at 36–37.

[96] 338 F. Supp. 2d 1187 (D. Colo. 2004).

[97] *Id*. at 1193– 94.

[98] *Id*. at 1194.

[99] *Id.*

important that the delay did not prejudice the plaintiff.[100] Thus, the court held that the statutory penalty was not proper in that case.[101]

The reasoning in *Cytrynbaum* is persuasive in finding that the statutory maximum is not proper in this case, but not that the statutory penalty should not be assessed at all. While Defendants may have lacked bad faith and S. Family was not severely prejudiced in this case, there is no doubt that Defendants have a duty to reply to S. Family's request and that such a response would have benefitted S. Family—if only to inform them that they had all of the plan documents. Similar to *Cytyrnbaum*, S. Family likely aided in in the confusion by not sending the letter to the appropriate department with which they had dealt previously. However, unlike *Cytrynbaum*, Defendants never responded to S. Family's request—Defendants' never sent a letter clarifying that the request should go to another department or that they had already provided S. Family with the requested documents. Failure to send a response is different than delaying to respond. The purpose of the statutory penalty is to ensure that plan administrators communicate with beneficiaries. The penalty is directed solely at Defendants' actions, not at S. Family's.[102] Defendants should have provided S. Family with a response. Therefore, considering the factors set forth in the cases cited by the parties, and in the Court's discretion, the purposes of the statute are best served by awarding a penalty of $10,000, or approximately $40.99 per day, against Defendants for failing to respond to the September 25, 2012 written request.

### B.  The October 16, 2012 and November, 26 2012 Requests

S. Family asserts that the Court should assess an additional penalty against the Defendants because CIGNA's failure to respond to the October 16, 2012 and November 26,

---

[100] *Id.*

[101] *Id.*

[102] *Moothart*, 21 F.3d at 1506–07.

2012, requests should be imputed to Defendants. Under 29 U.S.C. § 1024(b)(4), *the plan administrator* must provide plan documents when beneficiaries make a request. As a general matter, the plan administrator may only be held liable for requests for plan documents that are sent to the plan administrator.[103] The Tenth Circuit Court of Appeals has left open the possibility that, in certain cases, "a penalty may be based on information requests . . . that were not directed to the plan administrator."[104] However, the cases in which the Tenth Circuit has speculated about imputing liability for failure to respond to a request for records are cases in which the requests were sent to an employee or a subsidiary of the plan administrator, not a third party claims administrator.[105] S. Family does not cite to any cases in which a request for plan documents is sent to a claims administrator, and that request is imputed to the plan administrator for purposes of assessing penalties.

CIGNA's failure to respond to the requests should not be imputed to Defendants. It is undisputed that the plan document designates NASDAQ as the plan administrator, while CIGNA is the claims administrator.[106] The two subsequent requests of October 16, 2012 and November 26, 2012, were sent only to CIGNA.  Therefore, no statutory penalty will be assessed against the Defendants for failing to respond to Plaintiffs' October 16, 2012 and November 26, 2012 letters. S. Family's motion for summary judgment on these claims is denied.

---

[103] *Wilcott v. Matlack, Inc*., 64 F.3d 1458, 1461 (10th Cir. 1995).

[104] *Id*. (citations omitted).

[105] *See McKinsey v. Sentry Ins*., 986 F.2d 401, 404–05 (10th Cir. 1993); *Averhart v. US W. Mgmt. Pension Plan*, 46 F.3d 1480, 1490 n.8 (10th Cir. 1994).

[106] R. at 215.

### IV.    Attorney Fees

Plaintiffs also request an award of attorney fees under 29 U.S.C. § 1132(g).  To evaluate a

claim for attorney fees under § 1132(g), the Tenth Circuit has provided a non-exclusive five

factor test, including:

> (1) the degree of the offending party's culpability or bad faith; (2) the degree of
> the ability of the offending party to satisfy an award of attorney fees; (3) whether
> or not an award of attorney fees against the offending party would deter other
> persons acting under similar circumstances; (4) the amount of benefit conferred
> on members of the plan as a whole; and (5) the relative merits of the parties'
> positions.[107]

After considering these factors, this Court finds that an award of attorney fees is proper in

this case.  Defendants are able to satisfy the award and the award will persuade Defendants to

improve their procedures and policies in determining benefits. In addition, this Court has found

for the Plaintiffs on most of their claims. Therefore, Plaintiffs are entitled to attorney fees.

## ORDER

IT IS HEREBY ORDERED that S. Family's Motion for Summary Judgment is

GRANTED IN PART and DENIED IN PART, as follows:

1. Summary judgment is GRANTED on S. Family's claim that Defendants' must afford

   coverage for 60 days of residential substance-abuse treatment in addition to the costs

   of residential mental-health treatment.

2. Summary judgment is GRANTED for S. Family's claim for statutory penalties under

   29 U.S.C. § 1132(c) for Defendants' failure to respond to S. Family's September 25,

   2012 written request for plan documents.

---

[107] *Deboard*, 208 F.3d at 1244.

3.  Summary judgment is DENIED for S. Family's claim for statutory penalties under 29 U.S.C. § 1132(c) for Defendants' failure to respond to S. Family's October 16, 2012 and November 26, 2012 written requests for plan documents.

IT IS FURTHER ORDERED that Defendants are assessed a $10,000 penalty for violating 29 U.S.C. § 1132(c) by failing to respond to S. Family's September 25, 2012 written request for plan documents.

IT IS FURTHER ORDERED that S. Family is awarded attorney fees under 29 U.S.C. § 1132(g).  On or before November 24, 2014, S. Family shall file a motion and supporting documentation regarding claimed attorney fees and costs. Any response shall be filed on or before December 8, 2014.

Signed November 10, 2014.

BY THE COURT

District Judge David Nuffer